UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

ROBERT SCHEXNAYDER and                CIVIL ACTION NO. 6:09-cv-1390
his wife, RAMONA SCHEXNAYDER

VERSUS

SCOTTSDALE INSURANCE                  MAGISTRATE JUDGE HANNA
COMPANY, ENGLAND, INC.,
and DANIEL JOSE SPINA                 BY CONSENT OF THE PARTIES

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

### Procedural Background

This case is before this Court by consent of the parties pursuant to 28 U.S.C. § 636. On March 22, 2011, following private mediation in which a settlement was negotiated, an order of dismissal was entered without prejudice to the right, upon good cause shown, to reopen the action if the settlement was not consummated. The Court retained jurisdiction over the case pursuant to *Kokkonen v. Guardian Life*, 511 U.S. 375, 114 S.Ct. 1673 (1994). On May 10, 2011, the parties advised the Court that one of the conditions of settlement could not be satisfied. The parties wanted a "Medicare Set Aside" (MSA) approved by the Center for Medicare and Medicaid Services (CMS) for purposes of complying with the provisions of the Medicare Secondary Payer Statute (MSP), 22 U.S.C. § 1395y(b)(2) and the commensurate

regulations. However, they were advised by CMS that approval may not ever be forthcoming, and in the event it might possibly be forthcoming, it would not be for quite some time. As a result, the settlement could not be finalized.

In an effort to avoid rescinding the settlement altogether, yet comply with the provisions of the MSP, the parties filed a joint motion for declaratory judgment seeking approval of the settlement and a declaration that the interests of Medicare are adequately protected by setting aside a sum of money for future medical expenses. The parties also sought an order to set aside that amount from the settlement proceeds and deposit it into an interest-bearing account to be self-administered by Ramona Schexnayder for the purposes of paying future medical expenses related to the injuries her husband received in the accident. (Rec. Doc. 52).

The Court set the matter for an evidentiary hearing and ordered service to be made by the Clerk of Court on the Secretary of Health and Human Services, Chief Counsel of HHS/OGC for Region VI and the Civil Chief of the Office of the United States Attorney for the Western District of Louisiana. (Rec. Doc. 53) By letter dated July 6, 2011 from the U.S. Attorney, the Court was advised that HHS/CMS would not participate in the hearing. (Rec. Doc. 54)

At the hearing, the Court heard testimony from Robert and Ramona Schexnayder as well as from Christine Hummel, who was accepted as an expert in

MSA/MSP issues. The Court also received into evidence medical reports, summaries, and deposition testimony from the treating physicians, a medical expense summary, the economic loss evaluations of the parties' respective experts, the MSA prepared by Ms. Hummel and the various settlement documents.

**Factual Background**

The plaintiff, Robert Schexnayder, was injured in the course and scope of his employment on June 17, 2009 while driving a vehicle owned by his employer, Progressive Tractor & Implement Company, Inc. He was struck from the rear by an 18-wheeler owned by Independent Contractors of C.R. England, Inc. and driven by its employee, Daniel Jose Spina. The defendant truck driver and his employer were insured by National Casualty Company.

As a result of injuries received in the accident, Mr. Schexnayder underwent three surgical procedures. On April 26, 2010, he underwent a cervical decompression and fusion surgery. On October 1, 2010, he underwent a lumbar laminectomy, decompression, and fusion surgery. On March 4, 2011 he underwent implantation of a spinal cord stimulator. His past medical expenses were $377,308.80. Of that amount, $151,797.20 was paid by Progressive's workers' compensation insurance carrier, which also agreed to pay an additional $43,464.04 in medical expenses as part of the settlement it negotiated with Schexnayder. The remainder of the meidcal

expense was privately funded. Schexnayder testified that no medical expenses were ever paid, nor tendered for payment, by Medicare.

The treating orthopaedic surgeon, Dr. George Williams, testified that Schexnayder will continue with conservative orthopaedic treatment until October 2011, at which time he will be released to light duty activity. The treating physician who implanted the spinal cord stimulator, Dr. Albert Gros, reported that Schexnayder had an excellent result and is unlikely to require prescription pain medication for pain control in the future, however, he will require perhaps as many as two to three surgical generator changes, which must be programmed three to four times per year, over the course of his life expectancy. Dr. Gros described the changes as "relatively easy outpatient procedures." The treating neurologist, Dr. David Weir, reported that Schexnayder was free of prescription medication, but will require conservative treatment/pain management in the form of office visits, potential x-rays, and/or physical therapy if his symptoms recur. Finally, Dr. Michael Berard, a clinical psychologist who treated Schexnayder for chronic pain and depression, reported that the pain relief from the spinal cord stimulator was positive and that Schexnayder would need no more than four outpatient consultations per year for the next two years.

On January 14, 2011, the defendants stipulated to liability for the accident (Rec. Doc. 41) but "aggressively" defended disability, medical issues, and economic losses.  On March 21, 2011, the parties participated in mediation and the plaintiffs' claims were settled.  The defendants agreed to fund a settlement in exchange for a complete release of all of the plaintiffs' claims against them.  Part of the consideration for the settlement was that the plaintiffs would be solely responsible for protecting Medicare's interests under the MSP.

In addition, Schexnayder entered into a settlement with his employer and its workers' compensation insurer which was approved by the Louisiana Office of Workers' Compensation. In that agreement, the insurer waived a significant portion of its lien and was reimbursed for the remainder.  In addition, due to the offset to which it would be entitled as a result of the settlement, the workers' compensation insurer and the employer were given a full release.

According to the parties, the criteria for submitting a workers' compensation MSA for CMS approval were not met because Schexnayder was not a current Medicare beneficiary, nor did he have a "reasonable expectation" of Medicare enrollment within 30 months of the settlement date. Therefore, the parties concluded that no MSA was required for the workers' compensation settlement.

Nonetheless, various medical information was accumulated and a MSA was prepared by Christine Hummel, an attorney and MSA/MSP specialist, who determined that Robert Schexnayder's future potential medical expenses amount to $239,253.84. CMS took no action on the MSA leading to the instant motion. The parties contend that funding for this amount should be available for payment of those potential expenses, taking Medicare's interests into account, in order for Medicare to remain as a secondary payer.

CMS provided the Court, through the United States Attorney's Office, a handout "prepared as a service to the public. . . not intended to grant rights or impose obligations," which was introduced into the record. The handout is from the MSP Regional Coordinator for CMS in Region VI and provides in pertinent part:

> Medicare's interests must be protected; however, CMS does not mandate a specific mechanism to protect those interests. The law does not require a "set-aside" in any situation. The law requires that the Medicare Trust Funds be protected from payment for future services when there is a recovery for future medicals whether it is a Workers' Compensation or liability case. There is no distinction in the law.
>
> Set-aside is our method of choice and the agency feels it provides the best protection for the program and the Medicare beneficiary.
>
> . . .
>
> Anytime a settlement, judgment or award provides funds for future medical services, it can be reasonably expected that those monies are

> available to pay for future services <u>related to what was claimed and/or released in the settlement, judgment or award</u>.
>
> . . .
>
> The fact that a settlement/judgment/award does not specify payment for future medical services does not mean they are not funded. The fact that the agreement designates the entire amount for pain and suffering does not mean that future medicals are not funded. *The only situation in which Medicare recognizes allocation of liability payments to nonmedical losses is when payment is based on a court of competent jurisdiction's order after their review on the merits of the case* (a decision in a live case or controversy regarding which medical items and/or services are related to what is being claimed, released, or has the effect of being released, made by a court or a binding neutral finder of fact, upon development of the evidentiary record, and being fully advised of the Medicare beneficiary's past and potential medical costs, including, if applicable, Medicare's conditional payments to date.)[1]

The Court notes that language substantively identical to the italicized language contained in the handout was asserted by HHS in *Bradley v. Sebelius,* 621 F.3d 1330 (11th Cir. 2010), an allocation case in which HHS sought to recover conditional payments it had made to or on behalf of a decedent out of settlement proceeds. The settlement proceeds were inadequate to meet the value of the survivor's claims and the full Medicare lien. A Florida probate court determined the amount of the limited settlement proceeds to be allocated to the medical expense recovery. There, as here,

---

[1] Italicized emphasis added; underscore in original.

HHS was notified, but opted not to participate in the probate proceeding where the allocation was made.

Using principles of equity, the probate court reduced Medicare's lien based on the proportion of Medicare's contribution to what the total settlement would have been worth if adequate funds were available. HHS challenged the probate court's allocation, citing the language quoted above as taken from the "Medicare Secondary Payer Manual," MSP Manual (CMS Pub. 100-05) Chapter 7, § 50.4.4. The district court agreed with HHS. However, the court of appeals, in a *de novo* review, reversed and held in pertinent part:

> The Secretary declined to take any part in the litigation although at all times her position was adverse to the interests of the surviving children. The probate court made the allocation, finding that the Secretary should recover the sum of $787.50. Yet, still, the Secretary, citing no statutory authority, no regulatory authority, and no case law authority, merely relied upon the language contained in one of its many field manuals and declined to respect the decision of the probate court.
>
> In essence, the Secretary is asserting that its field manual is entitled to deference under *Chevron U.S.A. Inc. V. Natural Resources Defense Council inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Supreme Court has stated that "agency interpretations contained in policy statements, manuals, and enforcement guidelines are not entitled to the force of law."
>
> .   .   .
>
> The Secretary's position is unsupported by the statutory language of the MSP and its attending regulations. The Secretary's *ipse dixit* contained in the field manual does not control the law.

> . . .
>
> There is a second reason that the Secretary's position, as adopted by the district court, is in error. Historically, there is a strong public interest in the expeditious resolution of lawsuits through settlement. . . . Throughout history, our law has encouraged settlements. . . The Secretary's position would have a chilling effect on settlement. The Secretary's position compels plaintiffs to force their tort claims to trial, burdening the court system. It is a financial disincentive to accept otherwise reasonable settlement offers. It would allow tortfeasors to escape responsibility.

*Bradley v. Sibelius*, 621 F.3d at 1338-1339 (citations omitted).

According to the U.S. Attorney's submission to the Court:

> The current policy of CMS/Medicare is that they do not require or approve Medicare set aside settlements in personal injury cases...Since CMS does not mandate that it's interests be protected solely by set asides, the parties are free to construct an appropriate manner of providing that Medicare will not be billed for future medical services associated with their case. At the current time, CMS only expects that any settlement, judgment, or award which includes funds for future medical services will provide that the funds are available to pay for those medical services and that Medicare will not be billed for future services until those funds are actually exhausted.

Based upon the records and proceedings in this matter and the stipulations and submissions of counsel, this Court makes the following findings of fact:

1. Medicare does not currently require or approve Medicare set asides when personal injury lawsuits are settled. Medicare does not currently have a policy or procedure in effect for reviewing or providing an

     opinion regarding the adequacy of the future medical aspect of a liability settlement or recovery of future medical expenses incurred in liability cases.

2. Robert Schexnayder is not a veteran of the armed forces, nor is he currently a Medicare beneficiary. He will not obtain the age of 65 within 30 months of the date of settlement. He has never applied for Social Security disability benefits, and has no intention of applying for Social Security disability benefits. He does not have End Stage Renal Disease. He has never submitted any medical expense related to the injuries received in the accident that forms the subject matter of this lawsuit for payment by Medicare.

3. Mr. Schexnayder was employed by Progressive Tractor & Implement Company, Inc., and was acting in the course and scope of his employment at the time of the accident. His vehicle was struck from the rear by a vehicle owned by Independent Contractors and driven by its employee, Daniel Spina. National Casualty provided liability insurance coverage for these two defendants. As a result of the accident, Mr. Schexnayder received injuries to his cervical and lumbar spine for which he has undergone three surgical procedures and extensive medical

and psychological treatment. His treating physicians are of the opinion he has acheived a good result from the treatment he has received and his prognosis is good.

4. The defendants stipulated to liability; however, the reasonableness and necessity of Schexnayder's medical treatment, as well as his economic losses and general damages were contested.

5. Had this lawsuit been tried, Mr. Schexnayder would have been entitled to recover pecuniary and non-pecuniary damages. He has incurred medical expenses in the past that total approximately $377,000, some of which were funded by the workers' compensation insurer and some of which were not. He has incurred past economic losses in excess of $100,000. The amount of the future economic losses is estimated by the various experts to range from approximately $180,000 to 765,000. He has undergone three surgical procedures to his spine. Various estimates of future medical expenses were contained in the report of the expert economist. However, the Court finds the most recent submissions by the treating physicians to be the most reliable evidence of Mr. Schexnayder's future medical needs. Considering all of the facts and circumstances of the case, including the stipulation of liability and the

plaintiffs' significant past and future losses, the parties' agreement to settle this case for a payment of $2.1 million by the defendants represents a reasonable compromise to avoid the uncertainty and expense which would be incurred if this case were tried.

6. Bridgefield Casualty Insurance Company, the workers' compensation insurer of Progressive Tractor, intervened in the lawsuit to recover the workers' compensation and medical benefits it paid arising out of the accident.[2] As a part of the global settlement agreement reached by the parties, the workers' compensation exposure was compromised, and an order of approval was rendered by the Office of Workers' Compensation. In consideration for resolution of the intervention and the workers' compensation claim, the workers' compensation insurer funded some outstanding medical expenses, was reimbursed a portion of its lien, and waived its claim for reimbursement of the remainder. The amount of the third party settlement created an offset against any future exposure for the workers' compensation insurer, which was additional

---

[2] The name of the insurer contained in the settlement documents with the Office of Workers' Compensation is Retailers Casualty Insurance Company. According to the settlement documents in the third-party case, Bridgefield Casualty Insurance Company is now known as Retailers Casualty Insurance Company.

consideration for a full and complete release of the workers' compensation insurer and the employer. No MSA was submitted to CMS for approval in conjunction with the workers' compensation settlement.

7.   As a condition of the settlement with the defendants, the Schexnayders agreed to set aside a sum of money to protect Medicare's interests under the MSP.  Christine Hummel, accepted as an expert whose opinion was found to be reliable and based on sound methodology, prepared a MSA evaluation which utilized the Louisiana workers' compensation fee schedule for determination of future medical costs. She testified that this fee schedule would be acceptable to CMS under its procedures because resolution of the entire case included the settlement of a workers' compensation claim. Hummel also testified that she determined future medical needs based on a standard of reasonable foreseeability, rather than the more stringent standard of proof required by Louisiana substantive law that would be applied if this matter proceeded to trial. The Court finds Ms. Hummel's estimate of future medical costs set forth in the MSA to be both reasonable and reliable.

8. According to his health care providers and the opinion of Ms. Hummel, utilizing the workers' compensation fee schedule for Louisiana, Mr. Schexnayder can anticipate $7,037.43 in annual Medicare-covered expenses, plus $47,132.00 in one-time-only Medicare-covered costs, for a total of $239,253.84 in future Medicare-covered items or services. The Court finds that this amount adequately protects Medicare's interests and should be available to provide funding for future medical items or services related to what was claimed and released in this lawsuit that would otherwise be covered or reimbursable by Medicare.

9. The cognitive impairments sustained by Robert Schexnayder as a result of the accident preclude him from administering the fund that he intends to utilize for payment of future medical items or services that would otherwise be covered by Medicare; therefore, Ramona Schexnayder will assume that responsibility as the administrator of the fund.

10. Robert Schexnayder is aware of his obligation to reimburse Medicare for all conditional payments made by Medicare for any medical expenses he incurred that were related to the claimed injuries in this lawsuit. He testified that no requests or applications for payments have been made to Medicare, and that he knew of no payment that may have

been paid by Medicare. Although provided with notice of the hearing, HHS opted not to participate and provided no notice of any conditional payments for which it intended to seek reimbursement. Therefore, the Court finds there is no evidence of any conditional payments made by Medicare before the time of the settlement.

11. There is no evidence that Mr. Schexnayder, his attorneys, any other party or any other party's representative, are attempting to maximize other aspects of the settlement to Medicare's detriment.

Based upon the foregoing findings of fact, the undersigned makes the following conclusions of law:

1. Jurisdiction over the underlying litigation is based on 28 U.S.C. § 1332. This Court has jurisdiction to decide this motion pursuant to 28 U.S.C. § 2201 in that there is an actual controversy and the parties seek a declaration as to their rights and obligations in order to comply with the MSP and its attendant regulations in the context of a third party settlement for which there is no procedure in place by CMS.

2. Medicare may obtain secondary payer status under the MSP if payment has been made, or can reasonably be expected to be made, under a workers' compensation law of a State or under an automobile or liability

insurance policy, both of which are defined in the statute as a "primary plan." 42 U.S.C. § 1395y(b)(2)(A)(ii). A primary plan's responsibility for payment can be determined by judgment or settlement. 42 U.S.C. § 1395y(b)(2)(B)(ii), 42. C.F.R. § 411.22(b)(1-3).

3. By virtue of the terms and obligations in the settlement of both the workers' compensation claim and third-party claim, and his receipt of the settlement funds in conjunction therewith, Robert Schexnayder has become an "entity who received payment from a primary plan," and is therefore responsible as a primary payer for future medical items or services which would otherwise be covered by Medicare, that are related to what was claimed and released in this lawsuit, in the amount of $239,253.84. To the extent there are items or services incurred by Robert Schexnayder in the future that would otherwise be covered or reimbursable by Medicare, that are related to what was claimed and released in this lawsuit, Medicare shall not be billed for those items or services until the funds received by Robert Schexnayder for that purpose through the settlement are exhausted.

4. Robert Schexnayder is obligated to reimburse Medicare for all conditional payments made by Medicare prior to the time of the

        settlement and for all medical expenses submitted to Medicare prior to the date of this order, even if such conditional payments are asserted by Medicare subsequent to the effective date of this order.

4. The sum of $239,253.84, to be utilized by Robert Schexnayder out of the settlement proceeds to pay for future medical items or services that would be otherwise covered by Medicare, reasonably and fairly takes Medicare's interests into account in that the figures are based on reasonably foreseeable medical needs, (as opposed to the standard of proof required by the substantive law that would be applicable if the case were tried on the merits), based on the most recent information from the treating physicians, utilizing fee schedules that would be acceptable to CMS according to the expert who provided the MSA evaluation.

5. Since CMS provides no other procedure by which to determine the adequacy of protecting Medicare's interests for future medical needs and/or expenses in conjunction with the settlement of third party claims, and since there is a strong public interest in resolving lawsuits through settlement, *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 215, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994), the Court finds that Medicare's interests

      have been adequately protected in this settlement within the meaning of the MSP.

Based upon the foregoing conclusions of law, the court makes the following order:

IT IS HEREBY ORDERED that:

The parties' motion for a hearing (Rec. Doc. 52) is GRANTED; the parties' motion for declaratory judgment (Rec. Doc. 52) is GRANTED IN PART AND DENIED IN PART. More particularly:

1. To the extent that Robert Schexnayder receives confirmation from Medicare of any conditional payments made by Medicare for services provided prior to the date of this order, Robert Schexnayder shall promptly reimburse Medicare for such conditional payments;

2. Robert Schexnayder shall provide funding for $239,253.84 out of the settlement proceeds for payment of future medical items or services, which would otherwise be covered or reimbursable by Medicare, related to what was claimed and released in this lawsuit.

3. The funding for Robert Schexnayder's future medical expenses shall be deposited into an interest bearing account, which will be self-administered by Mr. Schexnayder's wife, Ramona Schexnayder, for the

purpose of paying any future medical items or services that would otherwise be covered or reimbursable by Medicare that are related to what was claimed and released in this lawsuit.

4. All other requested relief is DENIED.

Signed at Lafayette, Louisiana, this 28th day of July 2011.

_____
Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)